# Duffy, Appellant, *v.* Cooke.

*Constitutional law—Bill of rights—Acts of February 15, 1906, P. L. 19, and March 5, 1906, P. L. 83—Activity of officeholders—Construction of statutes—Implied repeal.*

1. The general assembly has full power to ascertain and declare what activities are inconsistent with the proper performance of public duties, subject only to the limitation that it may not abridge any man's constitutional rights.

2. The Act of February 15, 1906, P. L. 19, prohibiting political activity of officeholders in cities of the first class, is constitutional. It does not deprive citizens of any right conferred or protected by the Constitution.

3. Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the

cause or occasion of passing the statute, and when discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute. Effect should be given, if possible, to statutes, in pari materia, enacted at the same legislative session. An implied repeal is a question of intention, and the presumption against the intention to repeal is strengthened by the fact that both acts were under consideration by the legislature at the same time.

4. The Act of March 5, 1906, P. L. 83, forbidding the discharge of employees of cities of the first class for causes "religious or political," is not inconsistent with the Act of February 15, 1906, P. L. 19.

Argued Jan. 21, 1913. Appeal, No. 361, Jan. T., 1912, by plaintiff, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1911, No. 5383, denying writ of peremptory mandamus in case of Samuel Duffy v. Morris L. Cooke, Director of Department of Public Works of the City of Philadelphia. Before FELL, C. J., BROWN, MESTREZAT, POTTER, and MOSCHZISKER, JJ. Affirmed.

Petition for mandamus to compel Director of Public Works to reinstate plaintiff as general foreman in Bureau of Water of the City of Philadelphia.

SULZBERGER, P. J., filed the following opinion:

The plaintiff, a general foreman in the Bureau of Water of the Department of Public Works of the City of Philadelphia, was on February 7, 1912, discharged from his employment by the defendant who is director of that department, the cause of such discharge being the doing by the plaintiff of certain acts prohibited by the second section of the Act of February 15, 1906 (P. L. 19), commonly known as "The Shern law." He now in these mandamus proceedings asks to be reinstated. No question of fact is raised. It is not denied that he did the acts complained of, and it is not averred that there was any irregularity in the form or manner of his discharge.

He seeks relief on two grounds only:

First. That the Shern law is unconstitutional, and

Second. That if it be constitutional the second section thereof was impliedly repealed by the twentieth section of the Act of March 5, 1906 (P. L. 83, 91).

We think that the exhaustive opinion of Judge MAGILL in Commonwealth v. Hasskarl (21 Pa. D. R. 119) justifies us in deciding against the plaintiff on both points.

The earnest and able argument of his counsel seems to us to ignore certain well settled principles.

As well by the common law as under our Constitution and statutes, office holders have always been subjected to regulations and conditions. The whole doctrine of incompatibility of offices rests on this view. While a private person may accept as many employments as he can procure, it has always been held, that the holding of a public office may render it improper, for the holder to accept another public office, and this incompatibility may be produced not only by the mere physical impossibility of the performance of the duties of the two offices, by one person, but may arise where the nature and duties of the two offices are such as to render it improper from considerations of public policy, for one person to retain both: Bacon's Abridgment Offices and Officers, K. 2; Rex. v. Tizrard, 9 Barn. and Cress. 418.

Article XII, Section 2, of our Constitution, expressly confers upon the general assembly the power to declare what offices are incompatible. The whole question was thoroughly discussed in 1828 in our Supreme Court, in the great case of Commonwealth v. Binns (17 S. & R. 219). The majority of that court held that the defendant did not forfeit his rights to the office of alderman of the City of Philadelphia, by the fact that the newspaper of which he was the owner had been selected by the Secretary of State of the United States as one of those in which the national statutes were to be printed. The minority, GIBSON, C. J., and ROGERS, J., dissented from

this view, holding that the office of alderman was inconsistent with the employment to print the national statutes.

That case turned upon the construction of the Act of Asssembly of February 12, 1802, 3 Sm. Laws 485, but nobody doubted the constitutional power of the legislature over the whole subject.

It is a matter of common knowledge that the legislature was convened in the extraordinary session of 1906, for several reasons, one of which was, that an opinion had come to be generally held by the people of the Commonwealth, and of this city, that the power of appointment conferred upon directors of the various departments was in danger of being used to strengthen the power of the political party of which a director for the time being might be an adherent, instead of being exercised with an eye single to the interests of the whole public.

The Governor, in his proclamation, described this subject, as follows: "To provide for the government of cities of the first class and the proper distribution of the power exercised by such municipalities." "To establish a civil service system by means of which the routine offices and employments of the Commonwealth may be filled, by appointments made after ascertainment of qualifications and fitness and the incumbents of such offices, may retain them during good behavior."

The Constitution of 1790 provided against discrimination on account of religious sentiments, in the fourth section of its ninth article, as follows: "That no person who acknowledges the being of a God, and a future state of rewards and punishments shall on account of his religious sentiments be disqualified to hold any office or place of trust or profit under this Commonwealth," and this provision has ever since remained an integral portion of our Declaration of Rights.

In 1906, the legislature was confronted by an actual condition. The opinion was widely disseminated that

routine offices and employments were conferred because the appointee held certain political sentiments, and because he engaged to perform not only the duties of his employment, but also certain active propagandist service for the benefit of one political party in the State or city and in opposition to other political parties that might then be.

Such a state of facts if it existed would have been a practical denial of eligibility to members of the political parties, which were not favored, and would have amounted not to a legal, but to an actual disqualification on account of political sentiments. There is everything in the spirit of the Constitution to prohibit such proscription, and there is certainly nothing in its letter which denies to the legislature the right to resist the imposition of such a disqualification.

These principles hold good also, as to the legislative prohibition to these employees, to add new and important public or quasi-public functions to the duties required by the terms of their appointment. The general assembly has full power to ascertain and declare what activities are inconsistent with the proper performance of public duties, subject only to the limitation that it may not abridge any man's constitutional rights.

The plaintiff's claim that such rights are infringed in his case is due to the misconception that an office-holder has such, is in the contemplation of the Bill of Rights. It is this narrow view which forms the basis of his argument.

While the Constitution forbids ineligibility to office as a wrong against sound principles in a free state, it nowhere confers a right to obtain an office. That in the last analysis depends on the favor of the people or rather appointing power and this favor may, as we have seen, be coupled with reasonable conditions for the public good. If these conditions are too stringent, or too disagreeable, the option to refuse the office or to resign it remains.

The Act of March 5, 1906, is a step in the direction of reducing, and regulating this element of favor in bestowing office. To characterize it as an effort to abridge a right, is clearly erroneous, since it is a first endeavor to create a right where none had before existed.

The contention that there is an implied repeal of the second section of the Act of February 15, 1906, by reason of a repugnancy between it and the twentieth section of the Act of March 5, 1906, also rests on a misconception. Both acts were passed at the same extraordinary session of the general assembly. In both the legislature had in mind cities of the first class. In both the intent was to improve the public service. In short, these two statutes are in pari materia and must therefore be construed together. It would do violence to probability to suppose, without the amplest ground that one was intended to repeal the other. It must also be borne in mind that there is a certain quantity of unity in the action of a general assembly. Its very name imports the notion of one period or session. By the common law, statutes took effect from the first day of the session of Parliament at which they were enacted. This doctrine of relation having worked gross injustice, was changed in England by a statute of the time of George III, and has been changed in our State. But while the rule itself has changed, the important circumstance at the back of the rule remains, to wit, that the session of the general assembly, though spread over days, is a single, unified session, and that its acts have a coherence which forbids the assumption that an act passed on one day is repealed on the next. If on a superficial view of the Act of March 5th, there should appear to be a discrepancy between it and the Act of February 15th, it would be our duty to exhaust all the resources of interpretation, before coming to the conclusion that there is an irreconcilable repugnancy.

"Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be

collected from the cause or occasion of passing the statute, and when discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute": Big Clark Creek Improvement Co. v. Commonwealth, 94 Pa. 450, 455.

Effect should be given, if possible, to statutes, in pari materia, enacted at the same legislative session: Nazareth Literary & Benev. Inst. v. Commonwealth, 54 Ky. (14 B. Mon.) 266; State v. Rackley, 2 Blackf. (Ind.) 249; Florida Atl. & Gulf Cent. R. R. Co. v. R. R. Co., 10 Fla. 145, 160.

An implied repeal is a question of intention, and the presumption against the intention to repeal is strengthened by the fact that both acts were under consideration by the legislature at the same time: Mansel v. Nicely, 175 Pa. 367, 376.

The repugnancy complained of is merely this: The twentieth section of the Act of March 5th, forbids the discharge of an employee for a cause "religious or political." The second section of the Act of February 15th requires his discharge if he shall serve as a member of, or attend the meeting of, any committee, of any political party, or take any active part in political management or in political campaigns, or use his office to influence political movements, or influence the political action of any other officer, clerk or employee of any such city department, trust or commission, or if he shall in any way or manner interfere with the conduct of any election, or the preparation therefor, at the polling place or with the election officers while counting the vote or returning the ballot boxes, books and papers to the place provided by law for that purpose, save only for the purpose of marking and depositing his ballot as speedily as it reasonably can be done; or be within any polling place, or within fifty feet thereof, except for purposes of ordinary travel or residence, during the period of time beginning with one hour preceding the opening of

the polls for holding such election and ending with the time when the election officers shall have finished counting the votes and have left the polling-place for the purpose of depositing the ballot boxes and papers in the place provided by law for that purpose.

We do not think that such a cause for discharge is "political" within the meaning of the Act of 1906. It is not aimed at the political sentiments of the employee. If he perform the prohibited acts, he is guilty, to whichever party he may belong. He is not, however, guilty of a "political" offense, but of devoting himself to an activity which the legislature has declared to be incompatible with the proper performance of his duties.

We can see no repugnancy between the statutes.

The writ of peremptory mandamus is denied.

The opinion of MAGILL, J., in Com. v. Hasskarl (21 Dist. Rep. 119) referred to by SULZBERGER, P. J., in the opinion above quoted, was as follows:

"This is a proceeding by mandamus at the relation of the District Attorney of Philadelphia County against Joseph F. Hasskarl, Acting Director of the Department of Wharves, Docks and Ferries of the City of Philadelphia, and William K. Johnson, an employee of said department.

"The petition alleges that William K. Johnson, while an employee of the City of Philadelphia in the Department of Wharves, Docks and Ferries, from June 5, 1909, until or shortly prior to the filing of the petition, has acted as a member of the executive committee of the Republican party of the Forty-second ward of said city, and has taken an active part in the political management of the affairs of said political party in said ward and said election district; that during said period and at the general election held in 1909 and 1910, he, the said William K. Johnson, held a watcher's certificate, and acted at such elections as a watcher representing the Republican party, and that he was present at the polling place of the Third Election District of the Forty-

second ward during the said several elections the greater part of the time from 7 a. m. until after the conclusion of the count of the vote, both within and immediately outside the polling place; and, further, that at the election of November 8, 1910, he had interfered with the election officers in the discharge of their duties, and during the making of the count took, without legal authority, one or more of the official tally sheets and marked the tally of voters thereon.

"It is further averred that on January 14, 1911, Joel S. Harvey and George E. Sutton, residents of the Forty-second ward, and election officers of the said election district, notified the defendant, Joseph F. Hasskarl, by letter and affidavit, delivered to him, of the alleged political activity of the defendant, William K. Johnson, and requested that he be immediately dismissed from his employment in said department, in accordance with the provisions of the Act of General Assembly of February 15, 1906.

"To the petition is attached a copy of the correspondence with the defendant, Joseph F. Hasskarl, and between him and the defendant, William K. Johnson, showing that the latter was furnished with the details of the complaints made against him, and calling upon him to make answer thereto; to which he responded in writing, saying only, 'I have been advised by my attorney that I have broken no law'; and by a subsequent letter stating that he had resigned as a member of the executive committee of the Forty-second ward.

"The prayer of the petition is for a mandamus commanding the defendant, Joseph F. Hasskarl, Acting Director of the Department of Wharves, Docks and Ferries, to immediately dismiss the defendant, William K. Johnson, from his employment in said department upon the ground and for the reason that he did, while an employee of said city, engage in political activity and did take an active part in political management and in po-

litical campaigns, contrary to the provisions of the Act of February 15, 1906, P. L. 19.

"Upon presentation of the petition an alternative mandamus was issued as prayed.

"The defendant, Joseph F. Hasskarl, has made no return, plea, reply or demurrer, nor has he moved to quash.

"The defendant, William K. Johnson, filed a motion to quash the writ of alternative mandamus, and assigned various reasons in support thereof, and upon this motion the matter is now before the court.

"The reasons assigned in support of the motion, to quash were, for the purpose of argument, reduced to and argued upon the five questions or propositions which will be considered in the order presented at the argument.

"1. Is the Act of February 15, 1906, P. L. 19, within the subjects designated in the proclamation of the governor calling the special session of the legislature of that year?

"The proclamation of the governor of November 11, 1905, convening the general assembly in extraordinary session, gives as the fifth reason, 'To provide for the government of cities of the first class and the proper distribution of the power exercised by such municipalities.'

"Article III, Section 25, of the Constitution of this State, provides: 'When the general assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such session.'

"The purpose of the proclamation was to give notice to the legislators and to the public at large of the necessity for, and the character of, legislation to be considered at the extraordinary session. 'To provide for the government of cities of the first class,' may well be said to mean: to enact legislation for supplying the means of controlling, directing and regulating the business

and affairs of, and administering the laws relating to, cities of the first class.

"By the terms of the proclamation the whole subject of government of cities of the first class was brought before the legislature at the session in question just as it is at any regular session, and it would have been within its power to have repealed the Act of June 1, 1885 (commonly known as the Bullitt Bill), and to have enacted an entirely new and different plan of municipal government and control of cities of the first class instead of simply amending the said act. The members of the legislature, as well as the governor, clearly so understood it, as is evidenced by the passage of the act in question and its approval by the governor.

"The title of the Act of February 15, 1906, P. L. 19, which fairly states its contents, is 'An Act to amend an Act entitled "An Act to provide for the better government of cities of the first class in this Commonwealth," approved June 1, 1885, by amending Article XII, Section 2, by providing for the method of removing subordinate officers, clerks and employees, and by amending Article XV, Section 1, by prohibiting officers, clerks and employees from taking any active part in political movements and elections, and providing a penalty for violation thereof.'

"The act clearly relates to the government of cities of the first class only, as indicated both by the title and the body of the act, in that it provides for the manner of appointment, suspension and removal of officers, clerks and employees of such cities, defines to some extent their duties, and places certain restrictions upon their actions while engaged as such employees, being intended as an amendment in these respects to the Act of June 1, 1885 (Bullitt Bill), and thus relates solely to the machinery of government in cities of the first class.

"In Likin's Petition, 37 Pa. Superior Ct. 625, it is said: 'While it is necessarily upon the executive to designate the subjects to be considered by the general

assembly, it is outside our duty to go beyond the words of the law to inquire whether all the other precedent formalities have in fact been complied with. Moreover, the designation of the subject, so far as this case is concerned, is in no wise ambiguous; and that the general assembly clearly understood its meaning, and that this enactment was responsive to the call of the governor, is clearly shown by the title and body of the act. That the proclamation, so far as it relates to the act under consideration, was equally clear, and that the notice it carried was plain, is demonstrated by the records of the legislature, with the debates, amendments and final enactment, followed by the approval of the governor. The necessity for such legislation was manifested by the call for an extraordinary session of the general assembly.'

"While the exact question raised in the case at bar was not before the court in the cases of Pittsburgh's Petion, 217 Pa. 227; Likin's Petition, 223 Pa. 456, and Likin's Petition (No. 2), 223 Pa. 468, yet the duties of the executive and the powers of the legislature in their relation to an extraordinary session are very fully discussed and clearly defined; and the reasoning of the court and the authorities there cited apply with equal force to this case.

"We are of the opinion that the subject of the Act of February 15, 1906, P. L. 19 (Shern Act), was clearly within the subject designated in the proclamation of the governor as required by the Constitution, Article III, Section 25, and that the first reason assigned by defendant for quashing the writ is without merit.

"2. Is the classification attempted by the Act of February 15, 1906, proper classification qua the subject now under consideration?

"It is contended by counsel for defendant that the act in question is in violation of the Constitution, Article III, Section 7, which provides that 'The general assembly shall not pass any local or special law......regulating the affairs of counties, cities, townships, wards,

boroughs or school districts,......or creating offices or prescribing the powers and duties of officers in counties, cities, boroughs, townships, election or school districts.'

"That cities may be classified for governmental purposes cannot be questioned. Wheeler v. Philadelphia, 77 Pa. 338; Ayars's App., 122 Pa. 266; Seabolt v. Commissioners, 187 Pa. 318, and many other cases upon the subject so decide, and clearly define under what conditions classifications may be made; and in Ashworth v. Pittsburgh Railways Co., 231 Pa. 539, Mr. Justice MESTREZAT, delivering the opinion of the court, and quoting from the opinion of Mr. Justice WILLIAMS, in Ruan Street, 132 Pa. 257, said: 'In order that a given act of assembly relating to a class of cities may escape the charge of being a local law, it is necessary, as was said in Weinman v. Railway Co., 118 Pa. 192, that it must be directed to the existence and regulation of municipal powers and to matters of local government. Classification does not authorize legislation on subjects not relating to municipal affairs.......I will adopt the words of the Act of May 23, 1874, P. L. '230, and say that classification authorizes such legislation as relates to the exercise of the "corporate powers" possessed by cities of the particular class to which the legislation relates, and to the "number, character, powers and duties" of the officers employed in the management of municipal affairs. These are the purposes contemplated by the legislature; they are the only purposes for which classification seems desirable; they are the only purposes for which it has been upheld by this court.......All legislation not relating to the exercise of (municipal) corporate powers, or to corporate officers and their powers and duties, is unauthorized by classification.'

"Tested by the standard above recited, there would appear to be no doubt that the Shern Act of February 15, 1906, is legislation relating to proper classification, and not such as is prohibited by the Constitution, Article III, Section 7. It is clearly legislation 'relating to

the exercise of corporate powers possessed by cities of the class to which it relates,' and to the 'character, powers and duties of the officers employed in the management of municipal affairs.' The Act of June 1, 1855, P. L. 37 (Bullitt Bill), is undoubtedly constitutional. Its purpose was to provide for and regulate the government of cities of the first class. The Shern amendment of 1906 is to be considered a part of it, and relates to details of corporate or municipal management; and, as applied to the question at issue in this case, to the proper conduct of employees of the several departments of the municipal government, and for the purpose of obtaining more efficient, permanent and disinterested service on the part of such employees; or perhaps to emancipate them from political control or influence, well calculated to interfere with the full and faithful performance of their duties to the municipality by which they are employed, and from which they obtain compensation for their services. This, in our judgment, is a proper subject for legislative classification, and the act in question is not in violation of the provisions of Article III, Section 7, of the Constitution.

"We are therefore of the opinion that the second reason assigned by the defendant for quashing the writ should not be sustained.

"3. Has the legislature the power to forbid this defendant from doing the things complained of, except during the hours of his employment?

"It is contended by counsel for defendant that Section 2 of the Act of February 15, 1906, is in violation of Article 1, Section 7, of the Constitution, which provides, inter alia: 'The free communication of thoughts and opinions is one of the invaluable rights of man; and every citizen may freely speak, write and print on any subject, being responsible for the abuse of the liberty.'

"Section 2 of the act in question provides that 'No officer, clerk or employee of any city of the first class . . . . . . shall be a member of, or a delegate or alternate to, any

political convention,......shall serve as a member of, or attend the meeting of, any committee of any political party, or take an active part in political management or political campaigns,......shall in any way or manner interfere with the conduct of any election or the preparation therefor at the polling place, or with the election officers while counting the vote or returning the ballot boxes, etc.,......save only for the purpose of marking and depositing his ballot,......or be within any polling place, or within 50 feet thereof, except for purposes of ordinary travel or residence,' etc., etc., and for violation of the act provides as a penalty the immediate dismissal from employment by the city.

"This is an act which is intended to prevent political activity or taking an active, managing part in political affairs by employees of the municipality. It relates to personal activity, and does not in any way conflict with the constitutional provision in relation to 'the free communication of thoughts and opinions,' or the right of the citizen to 'freely speak, write and print on any subject.'

"An employer, whether an individual or a municipality, is entitled to have the best service of which an employee is capable. And if, in the judgment of the legislature, political activity on the part of clerks or employees of a city is likely to interfere with efficient public service, there would appear to be no legal reason why such activity should not be restrained or prohibited, so long as the individual elects to continue in the public service. If such restriction is distasteful to him, he has the alternative of seeking other employment. He is not, by the act, prohibited from engaging in free speech, or otherwise communicating or expressing his personal views upon political subjects, urging these views upon others in an effort to influence them to vote for the candidates of his choice, nor is his right to the free exercise of the elective franchise in any manner restricted.

"By the act, the employee is merely prohibited, while in the employ of the city, from doing certain specific

things which are designated as being opposed to the best interests of the municipal service. There can be no doubt that the legislature would have the power to enact that no person, while acting as a clerk or employee of a city of the first class, should engage in other business or employment, nor hold public office, even though the duties of such employment or office might not be performed during the actual hours of his employment by the city, as, for instance, that he should not accept employment as a night watchman, which would deprive him of the rest requisite for proper and efficient service during the working hours of his city employment. The act does not impose any restriction upon the actions, political or otherwise, of the individual as such, but simply upon the employee of the municipality while holding office or employment thereunder. It is simply a condition of his employment. If he does not like or is not willing to submit to the restriction upon his personal liberty, he need not accept nor continue in the employment of the city. If he does accept or continue in such employment, he waives his right to that freedom of action which he enjoys when otherwise employed. 'It belongs to the State, as the guardian and trustee of its people and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf or on behalf of its municipalities. No employee is entitled of absolute right, and as a part of his liberty, to perform labor for the State': Atkin v. Kansas, 191 U. S. 207 (24 Sup. Ct. Repr. 124) ; Com. v. Casey, 43 Pa. Superior Ct. 494.

"If it be urged, as it was at argument, that the act in question imposes a hardship or unjust restriction of the freedom of action of an employee of the municipality, the answer is found in the opinion of Mr. Justice Brown in Pittsburgh's Petition, 217 Pa. 227, wherein he says: 'Restraints on the legislative power of control must be found in the Constitution of the State, or they must rest alone in the legislative discretion. If the

legislative action operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts have no power to interfere, and the people must be looked to, to right, through the ballot box, all these wrongs.......The fact that the action of the State towards its municipal agents may be unwise, unjust, oppressive or violative of the natural or political rights of their citizens is not one which can be made the basis of action by the judiciary.'

"In Ex parte Curtis, 106 U. S. 371 (1 Sup. Ct. Repr. 381), the Act of Congress of August 15, 1876, which provides, inter alia, 'That all executive officers of the United States not appointed by the President with the advice and consent of the Senate, are prohibited from requesting, giving to or receiving from any other officer or employee of the Government, any money or property, or other thing of value for political purpose,' was held constitutional.  Mr. Chief Justice WAITE, in the opinion of the court, said: 'The act now in question is one regulating in some particulars the conduct of certain officers and employees of the United States.......The evident purpose of Congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service.  Clearly such a purpose is within the just scope of legislative power, and it is not easy to see why the act now under consideration does not come fairly within the legitimate means to such an end.'

"This language of the late Chief Justice applies with much force to the case at bar.

"We conclude that the legislature has the power to impose upon clerks and employees of cities of the first class the conditions and restrictions contained in the Act of February 15, 1906, and that the third reason assigned by defendant in support of his motion cannot be sustained.

"4. Is the Act of February 15, 1906, as it relates to

this matter, superseded or repealed by the Act of March 5, 1906, P. L. 83, so that this defendant can be removed from office only after trial and conviction, as provided by that act?

"It is first to be noted that there is no method of 'trial and conviction,' in the ordinary sense, prescribed by the Act of March 5, 1906 (Civil Service Act). The 20th section of the act referred to by counsel for the defendant, and upon which he relies in support of his contention, provides: 'No officer, clerk or employee in the competitive class or in the noncompetitive class of the classified service of any city of the first class, who shall have been appointed under the provisions of this act or of the rules made pursuant thereto, shall be removed, discharged or reduced in pay or position, except for just cause, which shall not be religious or political. Further, no such officer, clerk or employee shall be removed, discharged or reduced......until he shall have been furnished with a written statement of the reasons for such action, and been allowed to give the removing officer such written answer as the person sought to be removed may desire. In every case of such removal or reduction a copy of the statement of reasons therefor, and of the written answer thereto, shall be furnished to the Civil Service Commission, and entered upon its public records.'

"As has been said by Judge SULZBERGER in Com. v. Philadelphia, 232 Pa. 5: 'The statute contemplates that the officer intending to remove a subordinate must furnish him with a written statement of the reasons for such action, and must allow him to give a written answer before he actually removes him. It may be assumed that such answer will usually deny the offense charged, but whether it does or not, no mode of trial or further proceeding is provided for, save that the statement and answer become public records.'

"In the case at bar, the acting director, Mr. Hasskarl, gave notice in writing to the defendant, Johnson, of the

charges which had been lodged against him, with affidavits setting forth in detail the several acts committed by him, and the dates on which committed, which were said to be, and which are admittedly in violation of the provisions of the Second Section of the Act of February 15, 1906 (Shern Act).

"To this written statement of the director, the defendant, Johnson, made his answer in writing, in which he said only, 'I have been advised by my attorney that I have broken no law.' The several communications referred to and attached to the petition filed herein would appear to be such 'written statement of the reasons' and 'written answer' as are contemplated by the Act of March 5, 1906, and constitute a sufficient compliance therewith. The defendant not having denied the allegations of the petition, they must, for the purposes of this motion, be admitted to be true. Being true, they disclose several distinct violations of the provisions of the Act of February 15, 1906, and which are designated therein as causes for immediate dismissal from the service of the city, if that act is to be enforced.

"Is this act, as a whole, superseded or repealed by the Act of March 5, 1906? We think not. The former act, in its first section, makes provision for the method of appointing and removing subordinate officers, clerks and employees of cities of the first class. The latter act is entitled 'An act to regulate and improve the civil service of the cities of the first class in the Commonwealth of Pennsylvania, making violation of its provisions to be a misdemeanor, and providing penalties for violations thereof.' As has been said in Truitt v. Philadelphia, 221 Pa. 231: 'The act was manifestly intended to make full provision for the appointment and discharge of officers and employees in the civil service of the city, and to definitely prescribe the manner of exercising such authority, as well as to protect faithful and efficient appointees against removal for a political, religious or other insufficient cause.'

"In this respect the Act of March 5, 1906, is inconsistent with the first section of the Act of February 15, 1906, P. L. 19, which is, therefore, superseded and repealed. We cannot, however, take the same view with relation to the second section of the Act of February 15, 1906, which relates not to the manner or method of appointment or removal of officers, clerks or employees of cities of the first class, but to their conduct while in the employ of the city, and specifically defines certain things which shall not be done by them as being inconsistent with proper and efficient service to the city, and providing as a penalty for a violation of the act dismissal from the service. In other words, while the Civil Service Act of March 5, 1906, does not define specifically any cause for which employees of the city may be dismissed from its service, but provides only that they shall not be 'removed, discharged or reduced in pay or position except for just cause, which shall not be religious or political,' yet the Shern Act of February 15, 1906, Section 2, P. L. 19, defines certain offenses as legal cause for dismissal from the service which, therefore, must be considered as 'just causes' within the meaning of the Act of March 5, 1906. A just cause of removal may be any reason which renders the employee unfit for the position which he occupies or which may be inimical to the good of the service; and open and defiant disobedience of a statutory requirement and violation of the law under which he is employed is a just cause for dismissal. That the dismissal must take place in accordance with the provisions of the Act of March 5, 1906, is undoubtedly true; but this method provided for dismissal is not inconsistent with the causes for dismissal prescribed by Section 2 of the Act of February 15, 1906, P. L. 19. Nor do we consider that the causes for dismissal defined by the second section of the Act of February 15, 1906, P. L. 19, are 'political' causes within the meaning of the Act of March 5, 1906. The political cause referred to in the later act means political opinion, choice, pref-

erence, expression or affiliation with a political party, and not political activity or engaging in political or party work, or active participation in party management, or watching or solicitation of votes at the polls, or interfering with the conduct of elections, which are the causes referred to in the Act of February 15, 1906, P. L. 19, and which are thereby made legal causes for dismissal; and being legal causes, must be held to be just causes.

"Our conclusion, therefore, is that the second section of the Act of February 15, 1906, P. L. 19, is not inconsistent with, or repealed by, the Act of March 5, 1906, and that the defendant may be removed under the provisions of the latter act for the reasons provided in the former.

"The fourth reason assigned by the defendant in support of his motion is not sustained.

"The fifth reason presented by counsel for the defendant is: 'Article VI, Section 4, of the Constitution of this State, provide inter alia, "Appointed officers, other than judges of the courts of record and the superintendent of public instruction, may be removed at the pleasure of the power by which they shall have been appointed." In view of this constitutional provision, can the legislature say that they shall be removed by the appointing power when it is not his "pleasure" to do it?'

"Our view is that this question is settled by the case of Com. v. Black, 201 Pa. 433, in which former Chief Justice MITCHELL said: 'In practice, it has been established that removal is an executive function and may be exercised without the necessity of legislative concurrence. But it is equally well settled that, apart from constitutional restrictions, the legislature which creates an office may control the mode of filling or vacating it. ......Without going into the discussion at length, we are of opinion that a policeman is a subordinate ministerial agent or employee, like a fireman or watchman or superintendent of public squares or other property,

under the orders of the municipal department. He is not an independent "municipal officer exercising grave public functions," in the language of Houseman v. Com., 100 Pa. 222, but, at most, a petty officer, not intended to be included in the constitutional provision, and therefore subject, as to appointment and removal, to legislative regulations.'

"In the case at bar the defendant, Johnson, holds a clerical position under the orders of a municipal department, the department of docks, wharves and ferries, and is not an independent municipal officer exercising grave public functions. We are of the opinion, therefore, that the language used by Chief Justice MITCHELL in the case of Com. v. Black, 201 Pa. 433, applies with equal force to this case, and that the defendant is subject to dismissal under the provisions of the Acts of February 15, 1906, P. L. 19, and March 5, 1906.

"The fifth reason of the defendant is therefore not sustained.

"The motion to quash the write of alternative mandamus is overruled and dismissed."

The court denied the motion for a writ of peremptory mandamus. Plaintiff appealed.

*Error assigned* was the order of the court denying the motion.

*John H. Fow,* for appellant, cited: Ayars's Appeal, 122 Pa. 266; Wheeler v. Philadelphia, 77 Pa. 338; Com. v. Patton, 88 Pa. 258; Weinman v. Ry. Co., 118 Pa. 192; Scranton v. Whyte, 148 Pa. 419; Safe Dep. & Trust Co. v. Fricke, 152 Pa. 231; Stuart v. Publishing Co., 82 N. Y. Supp. 401; Fitzpatrick v. Publishing Co., 20 So. Repr. 173; Lankford v. County Commissioners, 73 Md. 105 (20 Atl. Repr. 1017; 22 Atl. Repr. 412); State v. Moore, 54 N. J. Law 121 (22 Atl. Repr. 993); Truitt v. Philadelphia, 221 Pa. 331

*James Gay Gordon, Jr.,* Assistant City Solicitor, with him *Michael J. Ryan,* City Solicitor, for appellee, cited: Com. v. Hasskarl, 21 Pa. D. R. 119.

*John H. Fow,* for appellant, in reply cited: Com. v. Fitler, 136 Pa. 129; Com. v. Schneipp, 166 Pa. 401; Jenkins v. Scranton, 202 Pa. 267; State Reporter's Case, 150 Pa. 550; Weaver v. Schuylkill County, 17 Pa. Superior Ct. 327; Brown's Estate, 152 Pa. 401; Newbold v. Pennock, 154 Pa. 591.

PER CURIAM, February 24, 1913:

The order appealed from is affirmed on the opinion of the learned president judge of the Common Pleas.