Wasniewski *v.* Civil Service Commission.

Argued June 7, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Gerald P. Ginley*, with him *O'Halloran, Stack & Smith,* for appellant.

*Martin R. Cohen*, Assistant Attorney General, with him *Lawrence T. Hoyle, Jr.,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, January 12, 1973:

This is an appeal from an order of the State Civil Service Commission (Commission) removing John E. Wasniewski (appellant) from his position as Liquor Stock Clerk II, probationary status, with the Pennsylvania Liquor Control Board because the appellant had engaged in illegal political activity in violation of Section 904 of the Civil Service Act (the Act), Act of August 5, 1941, P. L. 752, as amended, 71 P.S. §741.904.[1]

Our scope of review, under the authority of Section 44 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.44, is not *de novo* but looks only to errors of law or abuse of discretion as the determinative criteria. We must affirm an adjudication of the Commission unless it is determined that such adjudication violated the constitutional rights of the appellant or was not in accord-

---

[1] In pertinent part, Section 904 states as follows: *"No person in the classified service shall . . . serve as a member of any committee of any political party . . .* nor shall he be within the polling place or within fifty feet thereof, except for the purpose of carrying out official duties and of ordinary travel or residence during the period of time beginning with one hour preceding the opening of the polls for holding such election and ending with the time when the election officers shall have finished counting the votes and have left the polling place for the purpose of depositing the election material in the place provided by law for that purpose. . . ." (Emphasis added.)

ance with law, or that a finding of fact necessary to support the adjudication was not supported by substantial evidence. *Corder v. State Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 279 A. 2d 368 (1971); *Gibbs v. State Civil Service Commission*, 3 Pa. Commonwealth Ct. 230, 281 A. 2d 170 (1971).

The essential facts are not in dispute. In June, 1970, appellant became a committeeman for the Democratic Party in the 31st Ward, 23rd Division in Philadelphia. On December 3, 1970, he was appointed to a position as an hourly employee by the Liquor Control Board for employment in Philadelphia. It is clear, however, that he was actively engaged as a committeeman during the primary election of May, 1971. A letter, dated May 27, 1971, from appellant to his supervisor indicates that he remained politically affiliated as of that date.[2] On June 21, 1971, he was appointed to a full-time position as a Liquor Stock Clerk with probationary status. Not until August 2, 1971, did he notify his ward chairman that he was resigning his duties and affiliations as committeeman of the 31st Ward, 23rd Division, effective August 20, 1971.[3] After receiving a citizen's complaint concerning appellant's activities,[4] dated November 9, 1971, and subsequent to

---

[2] The letter reads as follows: "On May 26, 1971, Mr. Sam Kronick informed me that I would have to write you a statement, telling you that I would give up my political affiliations, in order to obtain Civil Service Status. This letter is my written statement that I will give up politics if I am given a Civil Service Appointment as Stock Clerk II."

[3] The letter reads as follows: "I, John Wasniewski regret to inform you that I am here notifying you that I must resign my duties and affiliations as Committeeman of the 31st Ward and 23rd Division, effective August 20, 1971. Please make all the necessary changes for me."

[4] The letter reads as follows: "We wish to call to your attention that a employee of Pennsylvania Liquor Control Board (Sub Warehouse 7011, Phila. John Wesniewski repeatedly violates and

an investigation and a hearing on the matter, the Commission ordered appellant removed from his position on February 29, 1972. An appeal was taken to this Court on March 13, 1972.

The appellant contends (1) that by exercising control over both the prosecutory and adjudicative processes of his removal, the Commission did not reasonably assure his right to a fair and unbiased adjudication and thus denied him his constitutional right of due process of law (citing for authority *Donnon v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A. 2d 92 (1971) ); and (2) that the decision of the Commission is not supported by competent, material and substantial evidence in that no evidence of the alleged political activity was presented.

As to the *first* of these, *Schlesinger Appeal,* 404 Pa. 584, 172 A. 2d 835 (1961), and *Gardner v. Repasky,* 434 Pa. 126, 252 A. 2d 704 (1969), "simply hold that it is no longer necessary to find *actual evidence of bias* by an *administrative* tribunal to sustain a finding that there was a denial of due process of law . . . the question before us is: Absent a showing of actual bias, did the municipality or its agency provide reasonable procedural safeguards to assure the protection of the respondent's right to a fair and unbiased adjudication?" *Donnon v. Downingtown Civil Service Commission, supra,* 3 Pa. Commonwealth Ct. at 369, 283 A. 2d at 94. (Emphasis in original.)

---

breaks rules and regulations of the Pennsylvania Liquor Control Board and of the Civil Service Act in many ways. As a Committeeman, John Wasniewski took active part in the recent political campaign. He and his wife work in the same place for the Pennsylvania Liquor Control Board. He had fist fights on the job with other employees. All these facts are known to employees in this place and so they cannot be denied." The writer of this letter and one other person signed with only their initials.

It is well settled that a combination of investigative and judicial functions within an agency does not violate due process, *F.T.C. v. Cinderella Career and Finishing Schools, Inc.*, 131 U.S. App. D.C. 331, 404 F. 2d 1308 (1968); *Pangburn v. C.A.B.*, 311 F. 2d 349 (1st Cir. 1962), but, at least in the circumstances present in *Donnon, supra,* the coalescing of the prosecutory and the adjudicatory function in *one individual* fails to *"reasonably safeguard* the [dismissed employee's] right to a fair and unbiased adjudication." 3 Pa. Commonwealth Ct. at 370, 283 A. 2d at 94. (Emphasis in original.)

Such individual prosecution and adjudication as in *Donnon* did not occur here. "Thus the record indicates that the investigation of Mr. Wasniewski's political activity was initiated after receipt of a citizen's complaint. The investigation was conducted by Mr. Balash, Chief of Verification and Personnel Investigation. Mr. Balash, of course, was neither a member of the Civil Service Board, nor was he the prosecutor at the hearing which was held to consider this matter."[5] We must agree with the Commission that since appellant has failed to show any bias on the part of the Commission and since, in addition, the Commission carefully separated the various functions involved in its review of this matter, it is clear that appellant was afforded his full rights to a due process hearing.

Appellant's *second* contention is that the Commission's adjudication is not supported by substantial evidence because no evidence of the alleged political activity was presented. It is not disputed that he was,

---

[5] Brief for Appellee, p. 10; the Civil Service Commission, by Section 203 of the Act, 71 P.S. §741.203, is mandated to initiate and conduct investigations of suspected political activity among employees in the classified service in Pennsylvania. It is further directed by Section 906, 71 P.S. §741.906, to remove any employee found to be in violation of the Act.

at least officially, a Democratic committeeman while both an hourly and a full-time employee of the Liquor Control Board because he finally did not resign in writing from his political position until August 20, 1971, long after he was warned to do so. There is testimony in the record that this letter of resignation was filed for record purposes only, and that appellant ceased actively engaging in political activity *after* the primary election of May, 1971. This same witness, however, did not dispute the fact that he had told the Commission's investigator, Mr. Balash, on December 2, 1971, that the appellant was considerably active as a committeeman upon his appointment and that he became "less active just prior to his resignation." In summary, appellant officially was a committeeman while both an hourly and a full-time employee; definitely was politically active while an hourly employee; and quite possibly was politically active as a full-time employee. The Commission could well have chosen to accept the December 2, 1971, conversation with Mr. Balash as well as the November 9, 1971, letter of complaint indicating appellant had been politically active in the "recent political campaign," possibly meaning the campaign for the general election of November, 1971. This would indicate that appellant had been politically active as a full-time employee, as well as an hourly employee.

It is evident from subsections (d)(3), (f) and (j) of Section 3 of the Act, 71 P.S. §§741.3(d)(3), 741.3 (f), 741.3(j), that both hourly employees and full-time probationary employees are in the "classified service." Therefore, from the express language of Section 904 of the Act, 71 P.S. §741.904, which forbids any person in the classified service to "serve as a member of any committee of any political party," regardless of whether that person is politically *active* or not, it becomes clear

that the Commission was justified in removing appellant from his employment.

Appellant regards his committee membership as a mere "technical violation of Section 904." Many states, however, as well as the Federal Government,[6] have enacted statutes restricting the political activities of public employees. No doubt the purpose of these statutes was not arbitrarily to restrict public employees from engaging in such activities. Instead they were the means of attaining the desired result of freeing them from political pressures, and thereby promoting the efficiency and integrity of the civil service.[7] "Such provisions have frequently been attacked on the usual constitutional grounds of infringing on the free speech or due process guaranties, as well as on grounds of being vague or ambiguous. The constitutional attacks have usually been rejected, the courts taking the view that the legislature, as a condition of public employment, may require the employee to accept reasonable restrictions of the constitutional rights he might otherwise enjoy." Annot., 28 A.L.R. 3d 717, 732 (1969). The doctrine, in other words, is that one may and must choose between the privilege of holding the office (or engaging in the employment in question) and the privilege of exercising the constitutional rights involved in the here attached conditions or restrictions. *See United Public Workers v. Mitchell,* 330 U.S. 75, 67 S. Ct. 556 (1947) (where the dismissal for political activity of a ward committeeman in the 28th Ward, 7th Division in Philadelphia was upheld); Nelson, *Public Employees and the Right To Engage in Political Activity,* 9 Vand. L. Rev. 27 (1955).

---

[6] The pertinent sections of the Hatch Act, which was passed in two installments, 53 Stat. 1147 (1939), and 54 Stat. 767 (1940), are found in 5 U.S.C. §§1501-1508, 7321-7327.

[7] *See, e.g.,* the discussion in *Ex parte Curtis,* 106 U.S. 371, 1 S. Ct. 381 (1882).

Thus, the Supreme Court in *Duffy v. Cooke,* 239 Pa. 427, 86 A. 1076 (1913), had under consideration a statute providing that "no officer, clerk or employee of any city of the first class . . . shall serve as a member of, or attend the meetings of, any committee of any political party, or take an active part in political management or political campaigns. . . ." Following the decision in *Commonwealth ex rel. Rotan v. Hasskarl,* 21 Dist. 119 (1912),[8] the court sustained the constitutionality of the statute on the ground that the holding of a public office depends on the favor of the people or the appointing power, which favor may be coupled with reasonable conditions for the public good. If the conditions imposed are too stringent or too disagreeable, the option to refuse the office or to resign remains. Moreover, the court pointed out that to characterize the statute as an effort to abridge a right is erroneous because the very purpose of the statute is to create the right of public employees to be free from political pressure.

It is unnecessary for us to discuss a further violation of Section 904 which was posited by the Commission for its removal of appellant—that on general election day, November 6, 1971, Mr. Wasniewski spent approximately 1½ hours at or near his polling place at 3625 East Lehigh Avenue in Philadelphia, and that he engaged in various discussions with people within 50 feet of that location.

Order affirmed.

———

Concurring Opinion by Judge Crumlish, Jr.:

I believe that the majority has reached a conclusion consistent with established precedent but I also believe that it is time for a legislative reconsideration of a

———

[8] This opinion was reprinted in *Duffy v. Cooke,* 239 Pa. 427, 434, 86 A. 1076, 1079 (1913).

statute which prevents public employees from engaging in any political activism. Such a statute significantly infringes into the areas of free speech and association, areas that are being afforded increasing protections. Indeed it encourages some citizens who feel strongly about their rights and responsibilities to engage in our political process to resort to duplicity and charade.

The effect of such a statute is to preclude a great number of people from contributing to public affairs, and, in this specific instance results in the stripping of a man of his livelihood for what could be termed a technical violation of the Act.

Furthermore, this is just the type of situation in which it is most probable that the potential violators are uninformed as to what activities are prohibited. I realize that, in general, ignorance is no defense, but in a situation where first amendment rights and possibly a person's livelihood are involved, perhaps the legislature should be somewhat more attuned to the needs and the desires of the populace.

In *National Association of Letter Carriers v. United States Civil Service Commission,* No. 577-71, filed July 31, 1972, a three judge federal panel considered an attack upon the Hatch Act, the federal counterpart to the statute now in question. The majority there concluded that the incorporation clause of that act, 5 U.S.C. §7324(a)(2) was unconstitutionally vague and overbroad. Judge Gesell, speaking for the majority, posed some queries that are relevant here and which should be dealt with in any reconsideration of the prohibition here in question. The issue was just how much activity could be prohibited and the majority stated: "If he [a governmental employee] writes a letter to a newspaper seeking support for a program endorsed by a political party, such as population control, does he intend to influence? How many people can see or hear what he

writes or says before an intent to influence by his opinion will be found? Can he respond to a pollster? Can he attend a political rally and sit on the platform where his presence will be noted? If he is a member of a union, a P.T.A. or a fraternal lodge, can he urge the organization to pass a resolution on a political issue? Can he appear on a television panel to discuss a question that for many may have political import? What issues are, after all, political in a campaign year—China, crime in the streets, inflation, foreign aid, national debt?"

The act in question in the instant case prohibits a person n the classified service from, *inter alia*, taking an active part in a political campaign, using his office or position to influence political movements or to influence the political action of any officer or employees in the classified service. Act of August 5, 1941, P. L. 752 as amended, 71 P.S. §741.904.

The questions quoted above pose serious problems as to *what* constitutes using one's office or position to influence political movements within the meaning of this Act. This is the area which deserves re-evaluation and I commend it to the legislature in view of the unquestioned importance of freedom of expression.

Judge Rogers concurs in this opinion.

---

Dissenting Opinion by Judge Kramer:

I respectfully dissent. With the benefit of the majority and concurring opinions, I have read and reread the short record in this case. It is my opinion that because the evidence presented against Mr. Wasniewski, the appellant, is so woefully weak and lacking in substantive evidence, I must conclude that the charges made against him were not supported by substantial evidence, as required by law.

Section 904 of the Civil Service Act, Act of August 5, 1941, P. L. 752, art. IX, Section 904, as amended,

71 P.S. §741.904, states in pertinent part: "No person in the classified service shall be a member of or . . . alternate to any political convention, . . . nor shall he serve as a member of any committee of any political party, . . . nor shall he be within a polling place or within 50 feet thereof, except for the purpose of carrying out official duties and of ordinary travel or residence during the period of time beginning with one hour preceding the opening of the polls for holding such election and ending with the time when the election officers shall have finished counting the votes and have left the polling place for the purpose of depositing the election material in the place provided by law for that purpose. . . . Provided, however, That the rights of any individual as a citizen are not impaired hereby, and the prerogative to attend meetings, to hear or see any candidate or nominee, nor to express one's individual opinion, shall remain inviolate."

The State Civil Service Commission (Commission) is subject to the Administration Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.51. That statute provides direction on our scope of review, at 71 P.S. §1710.44, where it is stated: "[T]he court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, . . . or that any finding of fact . . . is not supported by substantial evidence."

The only tangible evidence produced was two letters written by the appellant; and the only prosecuting witness was an investigator for the Commission, who testified on his investigation conducted after the alleged events occurred, and who was not present at or near the polling place in question on November 2, 1971.

Both letters are set forth in two footnotes to the majority opinion. The first clearly discloses the appellant's understanding that as a temporary hourly em-

ployee he was not included in the classified service. There is nothing in the record which discloses any disagreement by his employer with that understanding. As a matter of fact, his employer, the Liquor Control Board (Board), *thereafter,* upgraded him by appointing him to the full-time position of Liquor Store Clerk, with probationary status. In view of the first letter, the action by the Board would lead any reasonable man to believe that he need only resign his political party office after such a promotion.

Admittedly, the second letter of formal resignation from his political party position was sent approximately forty-two days after the appellant received his promotion, and after, under his understanding, he entered the classified service. However, without some showing of intentional defiance or injury to his employer, such a delay hardly seems an unreasonable delay or sufficient grounds for dismissal. There is not one piece of evidence that the appellant was informed or warned that he must, under threat of dismissal, resign prior to the actual date he sent the second letter.

The investigation into the affairs of the appellant came as a result of a handwritten and unsigned letter to the Commission. The Commission launched an investigation, and sent out an investigator to seek out the facts on appellant's political activities.

The charge was that appellant had been within fifty feet of a polling place for political purposes on election day. The extremely brief presentation by the Commission (entailing some sixteen questions and answers of the investigator) is completely devoid of any substantial evidence which indicates that appellant was improperly at or near the polling place on November 2, 1971. At best the investigator's testimony contains inferences, which, if unanswered, might permit a reasonable man to believe a wrongdoing, on a circumstantial evidence basis. In this case, however, the infer-

ences were answered. My reading of the record leads me to conclude that the testimony of appellant's witnesses satisfactorily explained his noninvolvement in politics, his resignation from political activities and his socializing in the evening after the election returns had been submitted. In saying this, I do not mean to imply that I am substituting my findings for that of the Commission; what I am saying is that, in using the reasonable man test (*see A. P. Weaver and Sons v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971)) there is not substantial evidence in this case to support the adjudication of the Commission.

The right to seek and keep employment is a fundamental right of every citizen which should not be denied lightly. To dismiss this employee on the evidence presented in this case is, to me, not only grossly unfair but unsupportable under the law.

I would also question the constitutionality of Section 904, set forth hereinbefore. In doing so, I acknowledge the need for vigilant protection against infringement upon the principle that a public employee is entitled to a right to work free from political pressure so as to permit the most effective public service. However, this must be balanced against the public servant's other basic and fundamental constitutional rights and freedoms. The question arises whether these fundamental rights and freedoms should be restricted for all because of the possible abuse by the few who would improperly interfere with public servants.

Experience, changing conditions and sometimes the mere passage of time causes a reappraisal of principles which at one time may have appeared to be unassailable. Under new statutes in this Commonwealth, even civil service employees are insulated and protected from prior existing possible political pressure by their recently organized labor unions. Courts, in recent deci-

sions, have commenced to scrutinize statutory infringements to public employees' rights to free speech and association. The majority in this case relies, in part, upon *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S. Ct. 556 (1947); but on July 31, 1972, a three-judge panel of the United States District Court, in the case of *National Association of Letter Carriers v. United States Civil Service Commission*, at No. 577-71, 41 U.S.L.W. 2069 (D.D.C. July 31, 1972) declared certain clauses of the Federal Hatch Act (5 U.S.C. §7324(a)(2)) to be unconstitutionally vague. In so doing it also said: "However, even if Mitchell's holding is considered binding, as the defendants contend, it is inconsistent with subsequent decisions delineating First Amendment freedoms. . . . The decisions, coupled with changes in the size and complexity of public service, place Mitchell among other decisions outmoded by passage of time."

From my point of view, the public employees' rights to free speech and association should remain inviolate, so long as their actions do not interfere with their public service and their duties to their employer. The firing of a public employee in the classified service because he may have been within fifty feet of a polling place on election day for an hour and a half does such violence to that principle that I must register this dissent.