**Roy C. PINTO, Petitioner**

v.

**CIVIL SERVICE COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 3, 2004.

Decided Sept. 14, 2004.

Reconsideration Denied Nov. 19, 2004.

Thomas W. Jennings, Philadelphia, for petitioner.

Karen D. Wood, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge.

OPINION BY President Judge COLINS.

Before this Court is a petition for review brought by Roy Pinto, an individual who is on a paid leave of absence from his Corrections Officer (CO) 1 position with the Department of Corrections (DOC), to work full time as elected Vice President of the Eastern Region of The Pennsylvania State Corrections Officers Association (PSCOA or Union). Said petition seeks review of an adjudication of the State Civil Service Commission (Commission), determining that Pinto engaged in prohibited political activity in violation of Section 905.2(b)(7) and (b)(10) of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.905b(b)(7) and (b)(10), (Act),[1] when he signed his name and his title (VP PSCOA) to a letter addressed to then gubernatorial candidate Edward Rendell, advising the latter of PSCOA's endorsement of Rendell's candidacy.

On May 21, 2001, PSCOA became the official bargaining unit representative of Commonwealth corrections officers. Pinto, who was employed as a Corrections

1. Section 905.2(b)(7) and (b)(10), 71 P.S. § 741.905b(b)(7) and (b)(10), added by Section 19 of the Act of June 26, 1989, P.L. 47, provides, in pertinent part,
   (b) [N]o person in the classified service shall take an active part in political management or in a political campaign. Activities prohibited by this subsection include, but are not limited to, the following activities:
   . . . .

   (7) [S]oliciting votes in support of or in opposition to a candidate for public office in a partisan election or a candidate of political party office.
   . . .

   (10) [E]ndorsing or opposing a candidate for public office in a partisan election or a candidate for political party office in a political advertisement, a broadcast, campaign, literature or similar material.

Officer 1 with DOC, was elected Vice President of the Eastern Region PSCOA and began working full time in that capacity on June 1, 2001. Pursuant to a collective bargaining agreement, DOC granted Pinto and other elected PSCOA officials "leave without pay for the maximum term of office, not to exceed three years." From June 1 to November 19, 2001, PSCOA directly paid Pinto his full compensation.

On October 15, 2001, Lawrence Ludwig, President of PSCOA, asked DOC to grant five PSCOA officials, including Pinto, leave with pay, in accordance with the State Employees' Retirement Code. Ludwig also asked that DOC make retirement seniority for these officials retroactive to their start date in PSCOA.

On November 19, 2001, DOC approved Ludwig's request and granted the five officials, including Pinto, "leave with pay for the period of the start date with PSCOA until the expiration of office on July 31, 2004." Under this arrangement, DOC paid Pinto the salary and benefits he received as a CO 1, while PSCOA pays the difference between this amount and Pinto's salary with PSCOA. DOC thereafter submitted a quarterly bill to PSCOA for all expenses incurred for Pinto, and PSCOA reimburses the DOC. This allowed Pinto to earn credited State service and be able to participate in the State employment retirement plan during his leave of absence, while working full-time for PSCOA. Essentially, according to the Commission, Pinto was "carried" as a DOC employee for retirement seniority purposes, an advantage not available to him while on leave without pay under the collective bargaining agreement.

In the beginning of 2002, Fred McKillop, a contract lobbyist/government consultant, who represented PSCOA's interests before the legislature from January to December 2002, asked for an advisory opinion from Frederick Smith, Chief Counsel for the Commission, as to whether an elected PSCOA officer who is on paid leave from his or her CO position is permitted under the Commission's rules to form a political action committee. Smith forwarded McKillop an advisory opinion stating that a PSCOA official on paid leave from his or her CO position is not exempt from restrictions on political activity, pursuant to Commission Rule 103.11, 4 Pa.Code § 103.11(b). The letter clarified that classified service employees who are on a regular leave of absence, or leave of absence to take a non-civil service position, are exempt from the political activity restrictions, but that employees such as Pinto, Ludwig, and others, who are on another type of leave of absence, not a "regular leave of absence," are not exempt from said restrictions. Allegedly, Pinto was informed about this advisory opinion.

Thereafter, PSCOA endorsed the candidacy of Edward Rendell for governor, and Pinto, acting in his capacity as Vice President of PSCOA, mailed Rendell a letter, dated October 7, 2002, stating that the members of PSCOA had voted to endorse Rendell's candidacy. The next day, this letter was posted on PSCOA's website.

On the basis of the foregoing actions, the Commission convened an investigatory hearing on May 1, 2003, pursuant to Section 951(d) of the Act[2], to determine whether Pinto, by his action in writing and posting the aforementioned letter, had engaged in prohibited political activity in violation of Section 905.2(b)(7) and (10) of the Act. The parties were permitted to submit evidence. The Commission concluded that only employees who take a leave without pay to work in a non-civil service position

2. Added by Section 20 of the Act of August 27, 1963, P.L. 1257.

are exempt from the Act's political activity prohibitions, and that because Pinto changed his leave status to that of a classified service employee on paid leave in order to receive retirement benefits, he was subject to the Act's political activity restrictions. Accordingly, the Commission found Pinto subject to disciplinary action under Section 905.2(f) of the Act, 71 P.S. § 741.905b(f),[3] and suspended him without pay for five days from his employment with the State Correctional Institution at Rockview. This appeal followed.[4]

On appeal, Pinto argues that his drafting and mailing of the letter cannot be considered "active participation" in a political campaign within the meaning of the Act. Pinto also contends that the record is devoid of evidence that he had any connection to the posting of the letter on PSCOA website, and that, therefore, he did not engage in any solicitation of votes for Rendell. Further, Pinto avers that no evidence of record indicates that he endorsed Rendell in "a political advertisement, a broadcast, campaign, literature or any similar material," or that the letter was even received or read by Rendell or his staff, let alone used in any of the prohibited methods of communication.

It is Pinto's position that regardless of his conduct, due to the unique nature of his employment status, he is exempt from all political activity restrictions contained in the Act, and that because he receives no economic advantage from his relationship with the Commonwealth, he is clearly on an unpaid, and thus regular leave of absence. Finally, Pinto argues that the political activity prohibitions contained in the Act are not only unconstitutional on their face, but also unconstitutional in violating the United States and Pennsylvania Constitutions by infringing upon his First Amendment rights.

The Commission argues that once Pinto requested and was granted a paid leave of absence, he assumed the obligation to abide by the Act's prohibitions against political activity. The Commission further maintains that Pinto's signing and sending a letter to gubernatorial candidate Rendell endorsing his candidacy on behalf of PSCOA members and posting it on PSCOA's website constituted both an endorsement of a candidate for political office in a partisan election, and a means of soliciting votes for the candidate. The Commission avers that if Pinto wished to engage in political activity, he had to request an unpaid leave of absence.

■ In considering whether the Commission erred in its determination, we find Pinto's contention that the Act's political activity restrictions do not apply to him to be without merit. In this respect, we concur with the Commission's determination that considering Pinto's receipt of retirement credits while on leave from his State job as a corrections officer, he is essentially on a paid leave of absence, since pursu-

---

**3.** Section 905.2(f) of the Act provides as follows:

> A person in the classified service who violates this section shall be removed from employment and funds appropriated for the position from which removed thereafter may not be used to pay the employe or individual: Provided, That, the commission at its discretion may impose a penalty of suspension without pay for at least thirty days, but not more than one hundred twen-

ty days, if it finds that the violation does not warrant termination.

**4.** Our scope of review in a civil service case is whether constitutional rights have been violated, errors of law committed, or whether the findings of fact of the agency are supported by substantial evidence. *Hetman v. State Civil Service Commission*, 714 A.2d 532 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 558 Pa. 634, 737 A.2d 1227 (1999).

ant to Section 5302(b)(2) of the State Employees' Retirement Code, 71 Pa.C.S. § 5302(b),[5] an individual in Pinto's position could only receive retirement credits if he is a State employee on paid leave. Therefore, we concur with the Commission's conclusion that Pinto is subject to the Act's political activity restrictions.

■ However, we do not find that substantial evidence of record supports the Commission's determination that Pinto's act of sending gubernatorial candidate Edward Rendell the October 7, 2002 letter from PSCOA advising him that PSCOA members voted to endorse his candidacy, coupled with the alleged posting of said letter on the PSCOA website, in and of themselves constituted political activity pursuant to the Act. Specifically, the record indicates that Pinto sent the subject letter in his capacity as Vice President of PSCOA solely for informational purposes and not as part of any official campaigning activities. Of relevance in this regard is the following excerpted testimony elicited from Pinto during the Commission's May 1, 2003 hearing:

> [Redirect Examination]
>
> Q. First, back to the letter, Mr. Pinto.
>
> . . .
>
> You signed this letter, correct?
>
> A. Yes.

**5.** Section 5302(b)(2) provides in relevant part:

> An active member on paid leave granted by an employer for purposes of serving as an elected full-time officer for a Statewide employee organization which is a collective bargaining representative under the act of July 23, 1970 (P.L. 563, No. 195), known as the Public Employe Relations Act:[1] Provided, That such leave shall not be for more than three consecutive terms of the same office; that the employer shall fully compensate the member, including, but not limited to, salary, wages, pension and retirement contributions and benefits, other

Q. Why didn't the president of the Political Action Committee sign this letter if you had no involvement in this at all?

A. I oversee all legislative affairs. I am summoned to respond in front of committees, hearings, whatever.

Q. Okay. So, signing a letter that says that PSCOA endorsed Edward Rendell, you would normally sign something like that?

A. Yes. . . .

[Recross–Examination]

Q. With regard to the letter to Rendell, first of all, did you ever include it in a political advertisement?

A. No.

Q. Did he [Rendell] ever include it in a political advertisement to the best of your knowledge?

A. No.

Q. A broadcast?

A. No.

Q. A campaign?

A. No.

Q. In literature?

A. No.

Q. Or in similar materials to political adverstisements, broadcasts, campaigns or literature?

A. Not to my knowledge. . . .

[Redirect Examination]

benefits and seniority, as if he were in full-time active service; and that the Statewide employee organization shall fully reimburse the employer for all expenses and costs of such paid leave, including, but not limited to, contributions and payment in accordance with sections 5501, 5505.1 and 5507, if the employee organization either directly pays, or reimburses the Commonwealth or other employer for, contributions made in accordance with section 5507.

. . . .

[1]  43 P.S. § 1101.101 et seq.

Q. Mr. Pinto, did you know that this letter, the October 7th letter to Mr. Rendell, was posted on PSCOA's website?

A. No. I did not.

Q. So, you didn't instruct anyone to post it one the website?

A. No.

[N.T., 5/1/03, pp. 86, 96, 97, 99.]

Other than the letter to Rendell and its posting on the PSCOA website, the Commission failed to proffer any additional evidence during the hearing to establish that Pinto was engaging in prohibited political activity. We therefore find that the Commission erred in concluding that Pinto violated the political activity restrictions of the Act, and in subsequently imposing the penalty of a five-day suspension without pay.

Accordingly, the order of the Commission is reversed.

Judge LEADBETTER and Judge COHN JUBELIRER, dissent.

### ORDER

AND NOW, this 14th day of September 2004, the order of the Civil Service Commission in the above-captioned matter is reversed.

### CONCURRING OPINION BY Judge PELLEGRINI.

Because a person who is on a "leave of absence," paid or unpaid, does not hold a "position" in the "classified civil service," Roy Pinto (Pinto) was not subject to or in violation of Sections 905.2(b)(7) and (b)(10) of the Civil Service Act (Act).[1] Because the majority concludes that he was subject to but not in violation of the Act, I concur in the result only.

Pinto was on a paid leave of absence from his Corrections Officer 1 position, a classified civil service position, with the Department of Corrections (Department) to work full-time as the elected Vice President of the Eastern Region of the Pennsylvania State Corrections Officers Association (Union). Pursuant to the collective bargaining agreement with the Union, the Department granted Pinto leave without pay for the maximum term of office, not to exceed three years. From June 1 to November 19, 2001, the Union paid Pinto his full compensation. Pursuant to the State Employees' Retirement Code (Code)[2], the Union requested that the Department grant Pinto leave "with pay" to make his retirement seniority retroactive to his start date in the Union which was approved. Under this provision, the Department paid Pinto his salary and benefits which were completely reimbursed by the Union to the Commonwealth. The net effect was that Pinto was able to earn credit for State service and to participate in the State employment retirement plan during his leave of absence while working for the Union.

While on leave "with pay" in his capacity as Vice President of the Union, Pinto sent a letter to Edward Rendell endorsing his candidacy for governor stating that the members of the Union had voted to endorse Rendell. The Commission held an investigatory hearing to determine whether Pinto had engaged in prohibited political activity in violation of Sections 905(b)(7) and (b)(10) of the Act which provide that:

No person **in the classified service** shall take an active part in political management or in a political campaign. Activities prohibited by this subsection

1. Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.905b(b)(7) and (b)(10).

2. 71 Pa.C.S. § 5302(b)(2).

include, but are not limited to, the following activities:

\* \* \*

(7) Soliciting votes in support of or in opposition to a candidate for public office in a partisan election or a candidate for political party office.

\* \* \*

(10) Endorsing or opposing a candidate for public office in a partisan election or a candidate for political party office in a political advertisement, a broadcast, campaign, literature or similar material. (Emphasis added.)

Ultimately, the Commission concluded that he was subject to disciplinary action because only employees who took a leave without pay to work in a non-civil service position were exempt from the Act's political activity prohibitions. Because Pinto had changed his leave status to a classified service employee on paid leave in order to receive retirement benefits and the letter constituted impermissible activities, the Commission found he was subject to the Act and suspended him without pay for five days from his employment.

On appeal, the majority reverses the Commission's decision concluding that while Pinto was subject to the Act because he was on a paid leave of absence, he was not in violation of the Act because there was insufficient evidence to prove that he was engaging in prohibited political activity. However, in reaching that holding, the majority agreed with the Commission that Pinto was subject to that provision of the Act because he was receiving retirement credits while on leave from his State job, and "an individual in Pinto's position could only receive retirement credits if he is a State employee on paid leave." (Majority opinion at 6–7.) I write separately because whether Pinto did or did not violate the Act is irrelevant as I disagree that Pinto was even subject to the Act.

Not all state employees are foreclosed from engaging in political activity enumerated by the Act; only employees who are in the "classified civil service." Section 3(d)(4) of the Act, 71 P.S. § 741.3(d)(4), defines "classified service" to include: "All positions now existing or hereafter created under the State Civil Service Commission." Subsection 3(f) defines "position" as "a group of **current** duties and responsibilities assigned or delegated by competent authority requiring the full-time or part-time employment of one person." This means that for an employee to be part of the classified service, he or she must be performing **current** duties to be holding a position in the classified civil service. Because Pinto is not performing any current duties for the Commonwealth, then he cannot be a member of the "classified civil service."

That an employee has to have current duties to be considered a member of the classified civil service is confirmed by Section 807.1 of the Act, 71 P.S. § 741.807, which provides the following regarding leaves of absence:

An employe who has been granted a leave of absence at the discretion of an appointing authority shall, upon expiration of the leave of absence, *have the right of return to the class and civil service status which he previously held,* provided such class is contained in the current class plan of the agency, or to any class and civil service status in the same or lower grade, provided that he meets the minimum qualifications given in the classification plan of the agency, provided that in all three instances there is a vacancy with the same appointing authority. (Emphasis added.)

Under these definitions, whether an employee is on a paid or unpaid leave of

absence is irrelevant. Because an employee only has the "right to return to the class and civil service status" after a leave of absence, that means that when an employee is on a leave of absence he or she is no longer in the class or civil status in which he or she previously held. In other words to "return" the employee has had to have left the classified service when on a "leave of absence." Therefore, once Pinto took a leave of absence, he was no longer a member of the classified civil service.

Because Pinto is not a member of the classified civil service while on a leave of absence, under the plain language of the Act, the prohibitions contained in Section 905(b) of the Act do not apply because they only apply to employees in the classified civil service. Accordingly, while I also would reverse the Commission, I would do so only on this basis and concur in the majority's opinion.